UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Harold C. Ward, Carol Rogers, Michael Powell, Langdon Erwin, Antonio Bates, Clyde Smith, Tony McCallum, Benjamin Drakeford, Jon Rosier, Azilee Boykin, Bobby Wilson, Gene Moore, and Jeanette Vinson on behalf of themselves and all others similarly situated, | Case No.: 3:19-cv-02124-SAL |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| Discover Bank, | |
| Defendant. | |

This matter is before the Court on Defendant's Motion to Compel Arbitration and to Dismiss, ECF No. 11, filed on August 28, 2019. Plaintiffs filed their Response in Opposition, ECF No. 24, on October 4, 2019. Defendant replied, ECF No. 27, on October 27, 2019, and Plaintiffs filed a sur-reply, ECF No. 33, on November 4, 2019. This matter is accordingly ripe for the Court's consideration. For the following reasons, the Court grant's Defendant's Motion to Compel Arbitration and dismisses this action.

## BACKGROUND

Plaintiffs are thirteen (13) named South Carolina residents who have previously been sued by Defendant Discover Bank ("Discover") in South Carolina state court. Bringing this action on behalf of themselves and all others similarly situated, Plaintiffs allege that in the course of the foregoing state court litigation–all of which Discover initiated to collect credit card debt– Discover unlawfully included in its public filings Plaintiffs' personal information, including

1

credit scores and partial social security numbers. Plaintiffs state causes of action under S.C. Code Ann. § 39-1-90, for negligence, negligence per se, and invasion of privacy.

On August 28, 2019, Discover moved to dismiss the Complaint and to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1 to 16 ("FAA"). ECF No. 11. Discover submits that Plaintiffs' claims are subject to arbitration under the terms set forth in Plaintiffs' respective Cardmember Agreements. In support of its motion, Discover submitted the declaration of Janusz Wantuch, the Director of Credit Risk Management for Discover Products Inc. *See* Wantuch Decl., ECF No. 11-2. Mr. Wantuch testified to the contents of each Plaintiff's Cardmember Agreement. *Id.* The Court relies on Mr. Wantuch's testimony and the exhibits attached to his declaration to the extent Plaintiffs have not submitted contradictory evidence or otherwise rebutted his assertions.

First, the parties agreed that the Cardmember Agreements are to be "governed by the laws of the State of Delaware and applicable federal laws." *E.g.*, ECF No. 11-2 at 30, 54, 72.[1] Each Plaintiff's Cardmember Agreement provides that use of the account or the associated credit card constitutes acceptance of the Cardmember Agreement: "The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement." *E.g.*, ECF No. 11-2 at 69. All Plaintiffs used their Discover cards after receiving their Cardmember Agreement. In addition, each Cardmember Agreement contains

---

[1] The parties both acknowledge the choice of law provisions, but cite a substantial number of South Carolina cases. The Court must apply South Carolina's choice of law rules, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941), and South Carolina courts generally honor choice of law clauses. *Team IA, Inc. v. Lucas*, 717 S.E.2d 103, 108–09 (Ct. App. 2011) (citing *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 728 (D.S.C. 2007)). The "only recognized exception" to honoring a choice of law clause under South Carolina's choice of law rules obtains when doing so would result in a violation of South Carolina public policy. *Id.* at 109 (citing *Nucor Corp.*, 482 F. Supp. 2d at 728). The parties' choice of Delaware law therefore controls issues of validity, enforceability, or revocability of the arbitration agreements, consistent with South Carolina public policy and without displacing federal arbitration law. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 n.7 (4th Cir. 2012).

an arbitration clause. With minimal variations that neither party claims are material, the arbitration clauses require arbitration of any claim "arising from or relating to" Plaintiffs' accounts. *See* ECF Nos. 11-2 at 33, 21-2 at 1. Some of Plaintiffs' Cardmember Agreements provide that claims challenging "the validity or enforceability of th[e] arbitration agreement, including the Class Action Waiver," however, "are not to be arbitrated." *See* ECF No. 11 at 26. The "Class Action Waiver" in each contract finally purports to prohibit litigating or arbitrating "any claims as a representative or member of a class." ECF No. 21-2 at 1.

Plaintiffs Powell, Erwin, Smith, and Boykin, unlike the nine other named Plaintiffs in this action, did not initially agree to arbitrate when they first became Discover cardholders. Wantuch Decl., ECF No. 11-2 at 2-12. Their Cardmember Agreements do, however, contain the following change of terms clause:

> We may change any term or part of this Agreement, including any Finance Charge rate, fee, or method of computing any balance upon which the Finance Charge rate is assessed by sending you a written notice at least 30 days before the charge is to become effective. Your express written agreement to any such charge or your use of the Account or the Card on or after the effective date of the change means that you accept and agree to the change. We may apply any such change to the outstanding balance of your Account on the effective date of the change of terms and to new charges made after that date.

ECF No. 21-1 at 2. Plaintiffs Powell, Erwin, Smith, and Boykin each received a notice of amendment to their Cardmember Agreements in 1999. This amendment added an arbitration clause to these Plaintiffs' respective Cardmember Agreements. Plaintiffs Powell, Erwin, Smith, and Boykin received instructions on how to opt-out of the arbitration amendment to their Cardholder Agreements, but none did so. Wantuch Decl., ECF No. 11-2 at 2-12. All Plaintiffs continued to use their accounts after receiving notice of the arbitration clause.

Finally, Plaintiffs' Cardmember Agreements state that arbitration is to be conducted either by the American Arbitration Association ("AAA") or JAMS in accordance with their

3

respective rules and procedures. The rules applicable to the AAA state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." ECF No. 11-5 at 2. The rules applicable to arbitration before JAMS similarly state that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." ECF No. 11-6 at 2.

Plaintiffs oppose compelled arbitration for the following reasons: (1) Discover's conduct does not "significantly relate" to its contracts with Plaintiffs such that the arbitration clauses do not cover the parties' present dispute; (2) Discover's conduct does not sufficiently involve interstate commerce, and the FAA accordingly does not apply; (3) with respect to Plaintiffs Powell, Erwin, Smith, and Boykin, the arbitration agreements are unenforceable because the arbitration clauses in their contracts were not contemplated by the Change in Terms clause and not supported by consideration; (4) the arbitration agreements are unconscionable; and (5) Discover waived its right to arbitrate by suing Plaintiffs to collect debts rather than arbitrate these claims. The Court disagrees with these arguments, and, for the following reasons, grants Defendant's Motion to Compel Arbitration and dismisses this action.

## DISCUSSION

Because the parties formed valid, written agreements to arbitrate claims in the context of a transaction related to interstate commerce, *i.e.*, establishing consumer credit card accounts, this dispute is governed by the FAA and properly referred to arbitration. In addition, although the parties disagree about whether the arbitration clause is broad enough to cover the present dispute, this disagreement should be resolved by arbitration in the first instance.

4

A district court "determines whether to give effect to an arbitration agreement bearing in mind the 'liberal federal policy favoring arbitration agreements.'" *Sutton v. Hollywood Entm't Corp.*, 181 F. Supp. 2d 504, 509 (D. Md. 2002) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). A party can compel arbitration if it establishes all of the following: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir.1991)). The parties agree that the first and fourth of these requirements are satisfied. The Court considers the parties' arguments on the remaining requirements below.

I.   **The Parties Agreed to Resolve Disputes Regarding the Scope of the Arbitration Clause by Arbitration.**

The parties' contracts evidence clear and unmistakable agreements to have the threshold question of the scope of the arbitration clauses decided by arbitration in the first instance. The Court therefore declines to consider whether agreements to arbitrate claims "arising from or relating to" Plaintiffs' accounts–or substantially similar agreements–purport to cover this dispute. By incorporating the rules governing arbitration before the AAA and JAMS, the parties agreed to have that question resolved by arbitration.

While "federal law demands that the scope of arbitration clauses be interpreted liberally," *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 575 F. Supp. 696, 704 (D. Md. 2008), parties may agree to delegate the threshold question of interpreting the scope of an arbitration clause. When the parties have so agreed, a court may not "decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530

(2019). Because this cuts against the normal rule that arbitrability questions are for a court, however, the court must find that the parties have agreed to delegate the question of scope by "clear and unmistakable evidence." *Simply Wireless, Inc.* v. *T-Mobile US, Inc.*, 877 F.3d 522, 526 (4th Cir. 2017).

Some of the contracts at issue in this case provide only that "the *validity* or *enforceability* of this arbitration agreement, including the Class Action Waiver, are not to be arbitrated," *see* ECF No. 11 at 26, but otherwise incorporate the rules of arbitration before the AAA or JAMS. Both sets of rules provide that disputes over the "scope" of an arbitration agreement are to be decided by an arbitrator. ECF No. 11-5 at 2 (AAA rules), 11-6 at 2 (JAMS rules). The parties therefore agreed that the questions of whether a contract was formed and whether defenses to enforcement exist are for the Court, but that an arbitrator must decide disputes over interpretation of the *scope* of the arbitration clauses.

In *Simply Wireless, Inc.*, the Fourth Circuit answered the question of whether incorporation of JAMS rules constituted "clear and unmistakable evidence" of the parties' intent to delegate questions of arbitrability in the affirmative. *Id.* at 527-28. The relevant JAMS rule stated as follows:

> Jurisdictional and *arbitrability* disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought ... *shall be submitted to and ruled on by the Arbitrator*. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*Id.* at 527 (quoting Rule 11(b), JAMS Comprehensive Arbitration Rules & Procedures (effective July 1, 2014)) (emphasis in original). The Fourth circuit joined the Fifth Circuit, *see Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534 (5th Cir. 2016), and the Tenth Circuit, *see Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017), in holding that incorporation of JAMS rules

constitutes the requisite "clear and unmistakable evidence" of the parties' agreement to delegate questions of arbitrability to an arbitrator. *Id.* at 527-28. The Fourth Circuit accordingly held that the district court erred in ruling on whether the claims fell within the scope of an arbitration clause. *Id.* at 529.

Plaintiffs do not directly address the import of incorporating the AAA and JAMS arbitration rules. They do, however, assert that the decision in *Berkeley Cty. Sch. Dist. v. HUB Int'l Ltd.*, 363 F. Supp. 3d 632 (D.S.C. 2019), which postdates *Henry Schein*, gives the Court authority to interpret the scope of the arbitration clauses at issue in this case. *See* ECF No. 33 at 2 n.1. Plaintiffs' assertion is unpersuasive for at least two reasons. First, *Berkeley Cty. Sch. Dist.* was subsequently vacated. *See Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019). Second, the district court explicitly did not rely on *Henry Schein, Inc.*, *see Berkely Cty. Sch. Dist.*, 363 F. Supp. at 638 n.2, but rather rested its decision to deny the defendants' motion to compel arbitration on the conclusion that one party never formed an agreement to arbitrate *any* claims in the first place. *See id.* at 651.

Here, the parties agreed that questions of *validity* and *enforceability* are for a court to decide, *i.e.*, whether, under general Delaware contract law, the parties agreed to arbitrate and whether any defenses to enforcement exist. By incorporating the AAA and JAMS rules, however, the parties agreed that disputes over interpretation of the scope of the arbitration clauses are to be determined by an arbitrator. Accordingly, the Court declines to rule on whether the parties' agreements "purport[] to cover the dispute," *Adkins*, 303 F.3d at 501, finding this question properly reserved to arbitration.

**II.     The Transactions Between the Parties are Sufficiently Related to Interstate Commerce such that the FAA Applies.**

The Court concludes that the transactions between Plaintiffs and Discover relate to interstate commerce. This element requires that the contract between the parties "in fact involved interstate commerce" by implicating any part of "Congress's commerce-clause power." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012). "[I]n deciding to apply the FAA," the court "need not identify any specific effect upon interstate commerce, so long as in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." *Id.* at 697-98 (quoting *Citizens Bank v. Alafabco, Inc.*, 529 U.S. 52, 56-57 (2003)).

All Plaintiffs are South Carolina residents, and Discover is headquartered in Delaware. The credit relationship between each Plaintiff and Discover inherently relates to interstate commerce. The Fourth Circuit, in *Rota-McLarty*, held that a financing agreement between a borrower and lender from different states sufficiently implicated interstate commerce such that application of the FAA was appropriate. 700 F.3d at 697 ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress's power to regulate that activity pursuant to the Commerce Clause.").

Plaintiffs' argument is that Discover's alleged *conduct* described in the complaint does not relate to interstate commerce, therefore claims arising out of that conduct cannot be arbitrated. This misapprehends 9 U.S.C. § 2: "A written provision in . . . a contract evidencing a *transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract" is "valid, irrevocable, and enforceable, save upon such ground as exist at law or in equity for the revocation of any contract." This statute contemplates only that the contract evidence a "transaction involving commerce," not that the "controversy arising thereafter"

necessarily involve commerce. *See id.* Because the underlying transactions in which the parties agreed to arbitrate relates to interstate commerce, the FAA applies.

**III.     Unilateral Amendments to Certain Plaintiffs' Cardmember Agreements that Add an Arbitration Clause are Valid and Enforceable Under Delaware Law.**

Plaintiffs Powell, Erwin, Smith, and Boykin argue that they never consented to arbitrate claims because their original Cardmember Agreements' Change of Terms clause did not contemplate adding wholly new terms such as an arbitration clause. Discover acknowledges that these parties did not initially agree to an arbitration clause when they became customers of Discover; however, it claims that they did agree to the Change in Terms clause and that in any event, Delaware law expressly permits Discover to unilaterally amend these Plaintiffs' Cardmember Agreements to contain an arbitration clause. The parties agree that the amendments could be rejected by opting out and that no Plaintiff opted out.

Plaintiffs Powell, Erwin, Smith, and Boykin assert that (1) the Change of Terms provision in their original Cardmember Agreement provided only for changes to existing terms, not the addition of wholly new terms such as an arbitration clause, and (2) the arbitration clause amounts to a contract modification that is not supported by consideration.

> In Delaware, the amendments at issue are expressly permitted by statute:
>
> Unless the agreement governing a revolving credit plan otherwise provides, a bank may at any time and from time to time amend such agreement in any respect, *whether or not the amendment or the subject of the amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties*. Without limiting the foregoing, such amendment may change terms by the *addition of new terms* or by the deletion or modification of existing terms, whether relating to plan benefits or features, the rate or rates of periodic interest, the manner of calculating periodic interest or outstanding unpaid indebtedness, variable schedules or formulas, interest charges, fees, collateral requirements, methods for obtaining or repaying extensions of credit, attorney's fees, plan termination, the manner for amending the terms of the agreement, *arbitration or other alternative dispute resolution mechanisms*, or other matters of any kind whatsoever.

9

5 Del. C. § 952(a) (emphasis added). This statute allows a credit card issuer to unilaterally amend its contracts with customers to include an arbitration provision on an opt-out basis. *See, e.g.*, *Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1258 (Del. Super. Ct. 2001).

In *Comrey v. Discover Financial Services, Inc.*, 806 F. Supp. 2d 778 (M.D. Penn. 2011), the court compelled arbitration over the plaintiff's argument that the arbitration clause at issue was not contemplated as a possible amendment by the change of terms clause in the original contract. *See id.* at 784, 786. The court held that "Delaware law expressly provides for the amendment of credit card agreements such that banks may add arbitration clauses *regardless of what the original Cardmember agreement contemplated*." *Id.* at 784 (citing 5 Del. C. § 952(a)) (emphasis added). The Court agrees with *Comrey*'s interpretation of § 952(a). The section explicitly states that arbitration amendments are permissible "whether or not [this] subject . . . was originally contemplated or addressed by the parties . . . ." *Id.* The only limitation in the statute obtains when the agreement "otherwise provides" that the bank *may not* amend the contract. *See id.*

Plaintiffs rely primarily on the New Jersey trial court case of *Discover Bank v. Shea,* 827 A.2d 358 (N.J. Super. Ct. L. Div. 2001) for the proposition that Discover's amendment is ineffective to add an arbitration clause to Plaintiffs' Cardmember Agreements. In *Shea*, Discover sought to compel arbitration based on an arbitration clause that was added to a consumer's contract by unilateral amendment. *Id.* at 360. The contract stated that Delaware's law would govern*.* The court refused to give effect to the choice of law clause, concluding that 5 Del. C. § 952, "clearly violates" New Jersey public policy. *Id.* at 363. In support of this conclusion, the *Shea* court relied heavily on *Fairfield Leasing Corp. v. Techni-Graphics, Inc.*, 607 A.2d 703

10

(N.J. Super. Ct. L. Div. 1992), another trial court decision, which held that a choice of law provision could not be given effect where it was not conspicuous. *Id.* at 703.

The *Shea* decision has been subject to criticism, and later decisions interpreting New Jersey's public policy have found arbitration clause amendments to be valid and enforceable under 5 Del. C. § 952, giving effect to Delaware choice of law provisions. *See Cohen v. Chase Bank, N.A.*, 679 F. Supp. 2d 582, 591, 597 (D.N.J. 2010).

Although South Carolina choice of law rules will not give effect to choice of law clauses where application of foreign law violates public policy, Plaintiffs have failed to establish any South Carolina public policy that disallows what is permitted by 5 Del. C. § 952(a). The 1999 amendments to Plaintiffs Powell, Erwin, Smith, and Boykin's Cardmember Agreements are accordingly valid and enforceable under Delaware law, which the parties agreed would govern the Cardmember Agreements.

Finally, assuming without deciding that the amendment must be supported by consideration, the parties' mutual obligation to submit to binding arbitration at the other's election is sufficient consideration to consummate a contract modification. *See, e.g., Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002).

The Court accordingly finds that Plaintiffs Powell, Erwin, Smith, and Boykin are bound by their Cardmember Agreements as amended and must submit their claims to arbitration.

**IV.    Unilateral Amendments to Certain Plaintiffs' Cardmember Agreements that Add an Arbitration Clause are not Unconscionable Under Delaware Law.**

Under Delaware law, a contract is unconscionable if it is "such that no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other." *Stinger v. Chase Bank, USA, NA*, 265 F. App'x. 224, 228 (5th Cir. 2008) (quoting *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978)). Further, "[m]ere disparity

11

between the bargaining power of parties to a contract will not support a finding of unconscionability." *Stinger*, 265 F. App'x. at 228 (quoting *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del. 1989)). Rather, in order for a contract clause to be unconscionable, the Court must determine that one party had superior bargaining power because the terms of the contract clause are "so one sided to be oppressive." *Id.*

Plaintiffs' argument that the amendments are unconscionable is without merit in light of the foregoing standard. The terms of the arbitration clauses at issue are not one-sided at all: each party to the Cardmember Agreements has an equal right to elect arbitration in the event of any dispute arising out of the contract. *See Grimm v. First Nat. Bank of Pennsylvania*, 578 F. Supp. 2d 785, 800 (W.D. Pa. 2008) (rejecting an unconscionability argument directed at credit card issuer's arbitration clause where the terms were "bilateral," granting either party the right to elect arbitration). In addition, Plaintiffs did have the ability to reject the arbitration terms: "Rejection of arbitration will not affect your other rights or responsibilities under your Cardmember Agreement." ECF No. 11-2 at 36.

The contract provisions in the record do not appear so one sided or oppressive so as to make them unconscionable, and the Court rejects this defense to enforcement.

## V. Discover did not Waive its Right to Elect Arbitration by Previously Litigating Against Plaintiffs.

Plaintiffs assert that because Discover has engaged in litigation against each of them in the past to collect credit card debt, it has waived the right to elect arbitration with respect to this dispute. The Court disagrees.

In accordance with the strong federal policy favoring arbitration, a court must resolve doubts concerning arbitrability in favor of arbitration, "whether the problem at hand is the construction of the contract language itself *or an allegation of waiver . . . .*" *Moses H. Cone*

*Mem'l Hosp.*, 460 U.S. at 25 (emphasis added). The party opposing arbitration on the basis of waiver bears a heavy burden, and a court will "not lightly infer the circumstances constituting waiver." *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir.1996)). A litigant "may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985) (citations omitted).

Plaintiffs do not provide any authority for the proposition that litigating one dispute effects a waiver of the contractual right to elect arbitration in a later dispute. In addition, this action was filed on June 20, 2019, in the Richland County Court of Common Pleas, and it was removed to this Court on July 29, 2019. Discover moved to compel arbitration and to dismiss this action on August 28, 2019, two days after it answered Plaintiffs' Amended Complaint. This case does not present Discover's substantial utilization of the litigation machinery such that Plaintiffs would be prejudiced in arbitration.

## VI.     Plaintiffs Must Arbitrate on an Individual Basis.

The Cardmember Agreements provide that neither party may litigate or arbitrate any claims as a representative or member of a class, and the parties agreed that "[n]otwithstanding anything else to the contrary . . . only a court, and not an arbitrator, shall determine the validity and effect of the Class Action Waiver." *E.g.*, ECF No. 11-3 at 46.

"[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (emphasis in original). Agreements to

arbitrate claims individually are enforceable under the FAA. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) (holding that a state law rule providing that certain class action waivers were unconscionable was preempted by the FAA). The parties here explicitly agreed *not* to arbitrate any claims as a representative or member of a class. In addition, South Carolina courts have upheld this type of class action waiver. *York v. Dodgeland of Columbia, Inc.*, 749 S.E.2d 139, 153 (S.C. Ct. App. 2013) (noting that, after *Concepcion*, "the provisions banning class arbitration in the present case cannot be invalidated based upon public policy considerations embodied within state law."). The parties to this action agreed to arbitrate their claims on an individual basis, and are properly compelled to do so.

### VII. Dismissal is the Proper Remedy, Because All of Plaintiffs' Claims are Referable to Arbitration.

While the FAA provides that a court should stay proceedings while compelling arbitration of certain claims, 9 U.S.C. § 3, the Fourth Circuit has instructed that when "all of the issues presented in a lawsuit are arbitrable," dismissal "is the proper remedy." *Choice Hotels Int'l v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). Having found that the broad arbitration agreements at issue in this case encompass all claims against Discover, this case will be dismissed.

### CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration, ECF No. 11, is hereby GRANTED. Plaintiffs' claims are hereby COMPELLED to arbitration on an individual basis and this case is hereby DISMISSED.

/s/ Sherri A. Lydon
United States District Judge

April 21, 2020
Florence, South Carolina